1
2
3
4
5
6
7
8              **UNITED STATES DISTRICT COURT**

9              **EASTERN DISTRICT OF CALIFORNIA**

10

11   BRUCE DWIGHT SUTTON,                 )   Case No.: 1:13-cv-1344 - AWI- JLT
                                          )
12              Plaintiff,                )   ORDER DENYING PLAINTIFF'S MOTION TO
                                          )   COMPEL FURTHER RESPONSES TO
13         v.                             )   DISCOVERY REQUESTS
                                          )
14   MANAGEMENT & TRAINING                )
     CORPORATION,                         )   (Doc. 53)
15                                        )
                Defendant.                )
16   _____ )

17         Plaintiff Bruce Dwight Sutton asserts Defendant Management & Training Corporation ("MTC")

18   operates the correctional facility in which Plaintiff is incarcerated.  Plaintiff alleges MTC is responsible

19   for his exposure to, and contraction of, Coccidioidomycosis, commonly known as "Valley Fever."  In

20   the matter pending before the Court, Plaintiff seeks to compel further discovery responses to 34

21   requests for production of documents related to his claims.  (Doc. 53.)  MTC objects to the request for

22   additional discovery, reporting that it "has produced all responsive documents . . . which included over

23   2700 pages of policies, minutes from meetings, administrative appeals, construction documents, and

24   emails."  (Doc. 54 at 10.)

25         The parties filed their "Joint Statement Re: Discovery Disagreement" in compliance with Local

26   Rule 251 on January 21, 2015.  (Doc. 54.)  The Court heard the oral arguments of the parties on

27   January 28, 2015.  For the following reasons, Plaintiff's motion to compel is **DENIED.**

28   ///

                                            1

## I.     Background and Procedural History

Plaintiff initiated this action by filing a complaint against MTC on August 22, 2013.  (Doc. 1.) Plaintiff alleges MTC held a contract with the United States of America to operate Taft Correctional Institution, and MTC's "officers, agents and/or employees negligently and recklessly exposed" Plaintiff to Valley Fever at the correctional facility.  (Doc. 1 at 2, ¶ 2.)  According to Plaintiff, MTC was "on notice of the risk of harm from cocci and failed to take actions to protect Plaintiff from that harm."  (*Id.* at 6, ¶ 16.)  Specifically, Plaintiff alleges:

> [He] was not provided any special protective breathing masks or other devices, and to his knowledge there was no special air conditioning equipment employed by the facility to filter out the dust occurring in the local environment. Nor was there any prohibition of outdoor activities during dusty conditions. Nor was anything done to keep the dust that forms that basis of the facility covered with grass or shrubs. Nor was that dust ever watered down or oiled down. Nor were inmates kept inside during windy conditions. As a result of these errors, Plaintiff contracted Cocci.

(*Id.* at 11-12, ¶ 41.)  Plaintiff reports he was diagnosed with Valley Fever shortly after arriving at Taft C.I. in November 2011, and alleges that "[a]s a result of [the] valley fever infection, Plaintiff will require lifetime medical supervision, treatment, and in all likelihood, medication."  (*Id.* at 12, ¶¶42, 47.) Defendant MTC filed its answer to Plaintiff's complaint on September 19, 2013.  (Doc. 14.)

The Court entered its Scheduling Order in this action on January 8, 2014.  (Doc. 25.)  Pursuant to that Order, non-expert discovery was to be concluded no later than December 1, 2014.  (*Id.* at 1.) However, on November 25, 2014, the parties requested the deadlines ordered by the Court be extended, because there were several outstanding discovery requests and Defendant had produced over 1,000 documents that Plaintiff had not been able to review.  (Doc. 46.)  The Court amended the Scheduling Order to allow an extension of time for the filing of non-dispositive motions, but did not extend the deadline for non-expert discovery.  (Doc. 51.)

## II.     Preliminary Observations

Despite the Court's explicit order that no discovery motions may be filed without authorization of the Court, Plaintiff completely ignored his obligation and filed the motion without any explanation attempting to justify his actions.  The scheduling order was explicit that,

> No written discovery motions shall be filed without the prior approval of the assigned Magistrate Judge. A party with a discovery dispute must first confer with the opposing party in a good faith effort to resolve by agreement the issues in dispute. If that good faith effort is unsuccessful, the moving party promptly shall seek a telephonic hearing

2

with all involved parties and the Magistrate Judge. It shall be the obligation of the moving party to arrange and originate the conference call to the court.

(Doc. 25 at 4.)

Likewise, throughout the joint statement, when setting forth the grounds for disagreement, Plaintiff omits the fact that Defendant provided supplemental responses to a number of the requests and, seemingly, appears to believe that he can proceed based upon his disagreement with the initial response without regard for the supplemental responses. Finally, the Court is stunned by what appears to be a multitude of frivolous arguments, i.e., "If MTC undertook no efforts to combat the spread of cocci at TCI, MTC should so state." (Doc. 52 at 41.) Clearly, the fact that a defendant does not possess responsive documents does not equate to an admission that it took no action. Even if a defendant does not have responsive documents *because* it took no action, this does not mean that the request for production of documents is converted to an interrogatory wherein the defendant is obligated to make a written explanation of its failure to act. If an admission is sought, a plaintiff is must propound requests for admissions under Fed. R. Civ. P. 36. Likewise, if a defendant attests it has no responsive documents, insisting to the contrary without providing supporting evidence, is insufficient.

Though the conduct of this motion causes the Court grave concern, it will, nonetheless, allow it to proceed. However, counsel is strongly admonished in future to comply with all orders of the Court and should not expect any further leniency.

### III.   Legal Standards Governing Discovery

The scope and limitations of discovery are set forth by the Federal Rules of Civil Procedure. In relevant part, Rule 26(b) states:

> Unless otherwise limited by court order, parties may obtain discovery regarding any nonprivileged manner that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the accident. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b). Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less

3

1    probable than it would be without the evidence."  Fed. R. Evid. 401.

2    **IV.    Discussion and Analysis**

3           A party may request documents "in the responding party's possession, custody, or control."

4    Fed. R. Civ. P. 34(a)(1).  Similarly, a party may serve a request "to permit entry onto designated land or

5    other property possessed or controlled by the responding party, so that the requesting party may

6    inspect, measure, survey, photograph, test, or sample the property . . ."  Fed. R. Civ. P. 34(a)(2).  A

7    request is adequate if it describes items with "reasonable particularity;" specifies a reasonable time,

8    place, and manner for the inspection; and specifies the form or forms in which electronic information

9    can be produced.  Fed. R. Civ. P. 34(b).  Thus, a request is sufficiently clear if it "places the party upon

10   'reasonable notice of what is called for and what is not.'"  *Kidwiler v. Progressive Paloverde Ins. Co.*,

11   192. F.R.D. 193, 202 (N.D. W. Va. 2000) (quoting *Parsons v. Jefferson-Pilot Corp.*, 141 F.R.D. 408,

12   412 (M.D.N.C. 1992)); *see also* Schwarzer, Tashima & Wagstaffe, *California Practice Guide: Federal*

13   *Civil Procedure Before Trial* (Rev. #1 2011) Discovery, para. 11:1886 ("the apparent test is whether a

14   respondent of average intelligence would know what items to produce").

15          The responding party must respond in writing and is obliged to produce all specified relevant

16   and non-privileged documents, tangible things, or electronically stored information in its "possession,

17   custody, or control" on the date specified.  Fed. R. Civ. P. 34(a).  Actual possession, custody or control

18   is not required.  "A party may be ordered to produce a document in the possession of a non-party entity

19   if that party has a legal right to obtain the document or has control over the entity who is in possession

20   of the document."  *Soto v. City of Concord*, 162 F.R.D. 603, 620 (N.D. Cal. 1995).  Such documents

21   include documents under the control of the party's attorney.  *Meeks v. Parson*, 2009 U.S. Dist. LEXIS

22   90283, 2009 WL 3303718 (E.D. Cal. September 18, 2009) (involving a subpoena to the CDCR); *Axler*

23   *v. Scientific Ecology Group, Inc.*, 196 F.R.D. 210, 212 (D. Mass. 2000) (A "party must produce

24   otherwise discoverable documents that are in his attorneys' possession, custody or control.").

25          In the alternative, a party may state an objection to a request, including the reasons.  Fed. R.

26   Civ. P. 34(b)(2)(A)-(B).  When a party resists discovery, he "has the burden to show that discovery

27   should not be allowed, and has the burden of clarifying, explaining, and supporting its objections."

28   *Oakes v. Halvorsen Marine Ltd.*, 189 F.R.D 281, 283 (C.D. Cal. 1998) (citing *Nestle Food Corp. v.*

4

*Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990)). Boilerplate objections to a request for a production are not sufficient. *Burlington Northern & Santa Fe Ry. v. United States Dist. Court*, 408 F.3d 1142, 1149 (9th Cir. 2005).

If a party "fails to respond that inspection will be permitted - or fails to permit inspection - as requested under Rule 34," the propounding party may make a motion to compel production of documents. Fed. R. Civ. P. 37(a)(3)(B)(iv). Further, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4). "The moving party bears the burden of demonstrating 'actual and substantial prejudice' from the denial of discovery." *Branch v. Umphenour*, 2014 U.S. Dist. LEXIS 109288 at *10 (E.D. Cal. Aug. 7, 2014) (citing *Hallet v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)).

   **A.     Request for Production Set One, No. 3**: Any and all documents which refer to Taft CI
   Policy re: Personal Protective Equipment dated March 17, 2009.

Defendant objected to this request, asserting it "is vague, ambiguous, and overly broad as to the term 'refer to,'" and "is overly broad as to time period." (Doc. 54 at 10.) Further, Defendant contends Plaintiff's request for all documents relating to the policy "is overly broad because personal protective equipment (PPE) includes equipment that has nothing to do with Valley Fever." (*Id.*) Defendant notes that "latex gloves [for] inmates who are employed as painters, or slip resistant footwear for inmates who are janitors" are PPE, but "have nothing to do with this lawsuit." (*Id.* at 11; Doc 52-1 at 3.)

On the other hand, Plaintiff asserts that Defendant's response to the discovery request was insufficient because there is a factual dispute regarding whether masks where available to inmates. (Doc. 54 at 11.) According to Plaintiff, "Defendant maintains that masks were 'readily available,'" while he "adamantly state[s] that masks were not available." (*Id.*) Plaintiff contends that "Defendant refuses to provide any emails or correspondence related to whether masks were requested by or offered to inmates or whether, as it relates to cocci, this policy was ever implemented." (*Id.*)

Significantly, as Defendant argues, the request for production of any and all documents related to the PPE policy appears overbroad, as the policy covered PPE for activities and equipment not related to this lawsuit. Defendant produced documents related to "the following inmate work related activities: Horticulture, Janitor-Housing Unit, Painters, Welders, and Wheels Powder Coating; the N95 Mask

Clearance Packet and Procedures; Collateral Duty Safety Officer (COSO) Guidelines; and TCI Policy 5A: Inmate Work and Performance Pay." (Doc. 54 at 11.) Plaintiff has not demonstrated how this response is insufficient. To the extent Plaintiff sought specific information regarding masks, the request for production was not narrowly tailored but sought documents as to *all* PPE. Defendant's objection that the request is overbroad is **SUSTAINED**. Therefore, Plaintiff's request to compel further discovery responses to Request for Production Set One, No. 3 is **DENIED**.

**B.    Request for Production Set One, No. 6**: Any and all DOCUMENTS which refer to the MTC Standard Operating Procedure re Treatment of Inmates with Cocci/Valley Fever (SOP-4002) dated 24 October 2007, and subsequent revisions.

Defendant produced the "Procedure re Treatment of Inmates with Cocci/Valley Fever (SOP-4002) dated October 2007" as part of its initial disclosures. (Doc. 54 at 12.) According to Plaintiff, "The policy states that "Inmate(s) who have a medical condition that puts them at risk for developing Coccidiodomycosis . . . will be re-designated to a federal facility wherein this fungal infection/disease is not endemic. The Policy then sets out a criteria used to determine if the inmate should be transferred." (*Id.* at 13.) Further, Plaintiff asserts: "the Policy mandates that "All positive Cocci tests will be reported to the Kern County Department of Pub. Health using the Confidential Morbidity Report form PM 110 (rev. 10/30/08)." (*Id.*)

Through this request for production, Plaintiff seeks information regarding "who developed this policy or determined its criteria . . . and what information was relied on when the policy was drafted." (Doc. 54 at 13.) Specifically, Plaintiff seeks to learn why race was not included in the list of criteria, because Plaintiff believes race "is the greatest indicator of a likelihood to acquire the illness." (*Id.*) In addition, Plaintiff reports MTC did not provide any completed Confidential Morbidity Report forms. (*Id.*) Plaintiff argues he is "entitled to review any completed forms that were prepared by and submitted by MTC to Kern County," because he was given "charts prepared by MTC that summarize the amount of cocci-infections at TCI, but were not provided the materials (such as these forms) used to compile those charts." (*Id.*) In taking this position, however, Plaintiff fails to explain how the information he seeks is fairly encompassed by the request.

Defendant maintains that it has "produced all responsive documents in its custody, possession, and control." (Doc. 54 at 14.) Although Plaintiff requested emails that reference SOP-4002, Defendant

6

reports that the policy "was established in 2007, and per the email retention policy, MTC does not retain emails from that time period." (*Id.*)  Defendant notes that Plaintiff deposed Warden Benov, Health Care Administrator L. Watts, and Dr. B. Rucker, and "addressed the issue of SOP 4002, including its creation, revision, et cetera." (*Id.*)  Further, MTC asserts "cocci serology/ morbidity reports for each inmate are maintained in inmate medical files and not in a central database," as a result "it would be unduly burdensome to go through every inmate medical file and pull the serology reports and other cocci medical records." (*Id.* at 15.)  In addition, Defendant argues that pulling the requested reports is unduly burdensome because MTC does not have a list identifying "all the Valley Fever positive inmates whose medical files that would have to be obtained and combed through in order to pull these reports." (*Id.*)

Plaintiff has not explained why Defendant's objections to the request as overbroad and unduly burdensome are without merit. *See Grabek v. Dickinson*, 2012 WL 113799 at *1 (E.D. Cal. Jan. 13, 2012); *Waterbury v. Scribner*, 2008 WL 2018432 at *1 (E.D. Cal. May 8, 2008) ("the moving party bears the burden of informing the court . . . for each disputed response, why defendant's objection is not justified").  The mere fact that "Plaintiffs have no idea who developed this policy or determined its criteria" is hardly a basis for compelling an additional response.  If this is Plaintiff's true knowledge deficit, the Court has difficult understanding why he did not simply ask for this information in an interrogatory and, instead, sought it through a document request which was not designed to elicit this information.

On the other hand, there is no indication that the Confidential Morbidity Report forms "refer to" the policy—although they may have been completed and provided to the county as a *result of* MTC's implementation of the policy.[1]  Importantly, Defendant has asserted that it has produced all responsive documents and denies that it has any additional documents whether in paper or electronic form.[2]  Plaintiff has not presented any evidence that any additional documents exist.  Thus, Plaintiff's request to compel the production of further documents responsive to the Request for Production Set One, No. 6

---

[1] Moreover, it appears that the Kern County Health Department, rather than MTC, may have prepared these reports. (Doc. 54 at 18)
[2] Defendant reports that "[c]ommunications with Kern County Public Health Department to report Valley Fever cases are typically telephonic." (Doc. 54 at 25.)

1   is **DENIED**.

2       **C.      Request for Production Set Two, No. 12**:  Any and all DOCUMENTS that pertain to
        any effort by the Federal Bureau of Prisons ("BOP") to determine the incidence of the disease

3       Coccidioidomycosis (or "Valley Fever") among the inmates or staff in its prison system at any
        time before December 2011.

4

5       Defendant objects to this request because it "assumes facts not in evidence."  (Doc. 54 at 15.)

6   Further, Defendant objects on the following grounds:

7       [The request] This request assumes facts not in evidence, is overly broad as to time period,
        and is unduly burdensome. This request is also vague and ambiguous as to the term

8       "incidence," as this term is not defined. Further this request is irrelevant to the extent that it
        seeks documents before MTC took over management of the premises in August 2007.

9       Further, this request is overly broad if it requests medical records for any/all inmates who
        report to medical staff with potential symptoms of Coccidioidomycosis, as those records

10      are maintained in patient medical records. Additionally, inmate medical records are
        protected by privacy rights and HIPAA protections.  Finally, it also appears that this

11      request was intended to be directed to the USA/BOP, and calls for speculation.

12  (*Id.*)

13      As an initial mater, the objection that an interrogatory "assumes facts not in evidence" is not

14  proper in the course of discovery.  *See Garcia v. Clark*, 2012 WL 1232315, at *2 (E.D. Cal. Apr. 12,

15  2012) (explaining "[a]ssuming facts not in evidence may be the basis for an objection during trial or

16  some other evidentiary hearing," but not during the course of discovery"); *see also Roesberg v. Johns-*

17  *Manville Corp.*, 85 F.R.D. 292, 298 (D.C. Pa. 1980) (that a discovery request "may contain an element

18  of conclusion is not objectionable on this ground alone").  Thus, Defendant's objection is overruled.

19  Nevertheless, MTC conducted "a diligent search regarding email communications and produced all

20  responsive emails . . . and letters that it had with the BOP including correspondence to Dr. Pelton about

21  Valley Fever and requests to BOP to consider race-exclusion policies." (Doc. 54 at 18.)  Further,

22  Defendant reports that "most" of its communications occurred during monthly meetings with the BOP,

23  and MTC "produced the minutes from all meetings from when MTC took over control of Taft in

24  September 27, 2007 until present."  (*Id.*)  As a result, Defendant maintains it produced "all documents

25  that it has in its custody, possession, and control that were responsive to this request."  (*Id* at 17.)

26      Although Plaintiff asserts he is entitled to any correspondence "[i]f the BOP corresponded with

27  MTC about cocci at TCI (or vice-versa)" (Doc. 54 at 16), he has not presented any evidence that

28  additional responsive documents exist.  In *Evans v. Tilton*, the Court ruled the defendants had

8

1    adequately responded to a request for production where the plaintiff failed to present "a sufficient

2    showing . . . which creates a reasonable belief that more information exists. *Id.*, 2010 U.S. Dist. LEXIS

3    36953, at *8 (E.D. Cal. March 18, 2010). Here, Plaintiff does no more than speculate that MTC has not

4    produced all documents that relate to the efforts made by the BOP "to determine the incidence of the

5    disease . . . among the inmates or staff in its prison system." Accordingly, Plaintiff's request to compel

6    further responses from MTC to the Request for Production Set Two, No. 12 is **DENIED**.

7          **D**.      **Request for Production Set Two, No. 13**: Any and all DOCUMENTS that pertain to
          collecting, analyzing, and/or reporting information concerning the incidence of the disease
8          Coccidioidomycosis (or "Valley Fever") among the inmates and/or the staff at Taft Correctional
          Institution (hereinafter "Taft CI"), from the time it first accepted federal inmates through 2011.
9

10   Defendant objects to this request on the grounds that it assumed facts not in evidence; overly

11   broad in scope as related to the time period, and to the extent Plaintiff seeks "medical records for any/

12   all inmates who report to medical staff with potential symptoms of Coccidioidomycosis;" unduly

13   burdensome; and "vague and ambiguous at to the term 'incidence.'" (Doc. 54 at 19.) For the reasons

14   set forth above, this objection is overruled. *See Garcia*, 2012 WL 1232315 at *2; *Roesberg*, 85 F.R.D.

15   at 298. In addition, Defendant fails to explain how the request is unduly burdensome, and as a result

16   this objection is overruled. *See Burlington Northern & Santa Fe Ry.*, 408 F.3d at 1149; *Oakes*, 179

17   F.R.D. at 283.

18         Regardless, "Defendant maintains that it did a diligent search and produced all policies, emails,

19   and minutes that are responsive to this request." (Doc. 54 at 20.) Plaintiff presents no evidence to

20   suggest that additional documents exist. *See Evans*, 2010 U.S. Dist. LEXIS 36953, at *8. Therefore,

21   the request to compel further responses to Request for Production Set Two, No. 13 is **DENIED**.

22         **E**.      **Request for Production Set Two, No. 14**: Any and all DOCUMENTS that pertain to
          the number of inmates actually receiving medical treatment for Coccidioidomycosis at Taft CI,
23         from the time it first accepted federal inmates to the present, including but not limited to the costs
          for such medical treatment.
24

25   MTC objects to this request as "assum[ing] facts not in evidence, . . . overly broad, and unduly

26   burdensome." (Doc. 54 at 20.) For the reasons set forth above, these objections are overruled. *See*

27   *Garcia*, 2012 WL 1232315 at *2; *Roesberg*, 85 F.R.D. at 298; *Burlington Northern & Santa Fe Ry.*,

28   408 F.3d at 1149. Defendant objects also that the "request is irrelevant to the extent that it seeks

documents before MTC took over management of the premises in August 2007;" "is compound and violates the privacy and HIPAA rights of third parties if medical records for individual inmates are sought." (Doc. 54 at 20.)  Further, Defendant reported that MTC "investigated and there are no responsive documents regarding the costs for medical treatment for these inmates, as the medical treatment is primarily provided at Taft by salaried medical staff." (*Id.*)  In a supplemental response, Defendant produced "the costs of diflucan (the primary treatment for Valley Fever) from August 20, 2007 until September 29, 2014." (*Id.* at 22; *see also* Doc. 54-1 at 17.)

Plaintiff argues the response is insufficient and asserts that he seeks information related to the costs of medical treatment. (*See* Doc. 54 at 21.) Moreover, it does not appear to seek medical records of inmates.  Plaintiff asserts MTC's response fails to "answer the question of how much MTC spent responding to cocci infections at TCI." (*Id.*)  Plaintiff explains:

> GEO, the previous contractor, apparently had to purchase additional insurance as a result of the costs of responding to inmates with cocci infections. An Oct. 1, 2005 Report prepared by Abt Associates, Inc., titled "Contracting for Imprisonment in the Federal Prison System: Cost and Performance of the Privately Operated Taft Correctional Institution" . . . states, on page 56, that "GEO's spending for insurance and self-insurance nearly tripled between FY 1998 and 2002, largely due to the unanticipated costs of treating patients and staff infected with Valley Fever, or Coccidioidomycosis, a sometimes deadly disease caused by an infectious fungus that is endemic in the San Joaquin Valley, where Taft is located. GEO's contract assumes all costs for healthcare and it has experienced high costs of hospitalization and care. Because of the facility's location, GEO has been unable to obtain third-party insurance that costs less than the cost of self- insurance, and GEO has consequently chosen to bear these costs on its own."

(*Id.*)  Plaintiff asserts it is reasonable to presume that "MTC made similar investigation and analysis as its predecessor, GEO," and argues that he is "entitled to know what cost-estimates were made by MTC relating to Valley Fever." (*Id.*)

However, it is not clear that the request would encompass documents related to a failed attempt to obtain health care insurance coverage even assuming MTC undertook the same efforts to obtain coverage as GEO.  Notably, the request seeks information about "the number of inmates *actually receiving medical treatment.*"  Exactly how this request, then, fairly seeks information about a failed attempt to buy insurance, is unclear.

Additionally, although the insurance coverage held by MTC's predecessor, apparently, was impacted by the number of inmates contracting Valley Fever, there is no indication that MTC had the

1   same insurance carrier or suffered a similar cost increase for its insurance or that MTC even had

2   insurance or ever wanted to have it.  MTC asserts that it has not submitted written applications for

3   insurance. (*See* Doc. 54-1 at 66, Gruenberg Decl. ¶ 11.)  As such there is no evidence to support

4   Plaintiff's speculation that there must be documents related to the number of inmates infected with

5   Valley Fever and/or MTC's insurance costs.  Moreover, Defendant maintains that it "does not have

6   custody or control of any documents related to the cost of their outside care, as MTC pays for outside

7   medical services in the aggregate and does not differentiate between Valley Fever medical expenses

8   versus other types of medical expenses."  (Doc. 54 at 22.)  Thus, Plaintiff's motion to compel further

9   production of documents in response to Request for Production Set Two, No. 14 is **DENIED**.

10          **F.      Request for Production Set Two, No. 15**:  Any and all DOCUMENTS that pertain to
       the number of federal inmates who were hospitalized (either at Taft CI's medical facilities or

11     elsewhere) after contracting Coccidioidomycosis at Taft CI, from the time it first accepted
       federal inmates for incarceration to the present, including but not limited to the costs for such

12     hospitalizations.

13          Defendant objected to this request for production as overly burdensome, speculative, and

14   irrelevant because that the costs for other inmates are irrelevant to the plaintiff's claims.  (Doc. 54 at

15   23-24.)  However, MTC "investigated and determined that only 3 inmates from Taft have been

16   hospitalized after contracting Coccidioidomycosis."  (*Id.* at 23.)  In its supplemental response to the

17   request, "Defendant produced the Medical/Surgical and Psychiatric Referral Requests for inmates who

18   have been referred for outside care. Defendant also produced the monthly Performance Minutes from

19   2007 until present, which identifies the number of inmates who have been transported for medical care

20   each month."  (*Id.* at 24.)  Defendant notes that outside medical services are billed in the aggregate so

21   the costs for the cost of the hospitalization of these three inmates re not ascertainable.  However, at the

22   hearing, Defendant agreed to confirm there was no separate line item related to the cost of

23   hospitalization for these inmates.  Defendant SHALL provide this confirmation no later than **February**

24   **6, 2015**.

25          On the other hand, Plaintiff fails to explain how the supplemental response was nonresponsive

26   or insufficient.  Further, to the extent that the responses were insufficient, Plaintiff has not carried his

27   burden to explain any "actual and substantial prejudice."  *See Branch*, 2014 U.S. Dist. LEXIS 109288

28   at *10 (citing *Hallet*, 296 F.3d at 751 (9th Cir. 2002)).  Thus, Plaintiff's request to compel further

1    responses to Request for Production Set Two, No. 15 is **DENIED**.

2        **G.    Request for Production Set Two, No. 20**: Any and all DOCUMENTS that pertain to

3    communications of any kind between any agency of the Department of Justice (including but
     not limited to the BOP) and the U. S. Centers for Disease Control and Prevention (CDC), and/or
     any of its divisions, such as the Division of Foodborne, Bacterial and Mycotic Diseases

4    (DFBMD), that pertain or relate to the prevention, control, or management of the disease
     Coccidioidomycosis (or "Valley Fever").

5

6        Defendant argues that this request is compound, unduly burdensome, and vague and ambiguous.

7    (Doc. 54 at 25.)  Also, Defendant argues this is overly broad and irrelevant "to the extent that it seeks

8    documents before MTC took over management of the premises in August 2007."  (*Id.*)  Finally, MTC

9    asserts the request should have been directed to the BOP.  (*Id.*)

10       In response, Plaintiff conceded that "MTC can limit its response to its period of operation."

11   (Doc. 54 at 26.)  However, Plaintiff argues that Defendant failed to produce all the responsive

12   documents because "MTC produce[d] a letter to the BOP dated January 13 2014 . . . regarding MTC's

13   request to change the at-risk of Valley Fever designation to include African Americans and Filipinos,"

14   and letter indicated it was "a follow up to MTC's October 14, 2013 letter."  (*Id.*) Plaintiff asserts the

15   letter from MTC to the BOP dated October 14, 2013, was not produced.  (*Id.*) Also, Plaintiff seeks

16   further information related to communications with "with the Kern County Department of Health for

17   each cocci-infection at TCI," arguing he is entitled to see any such "emails, letters, and completed

18   forms" reporting Valley Fever cases.  (*Id.*)

19       Defendant reports that MTC "did a diligent search regarding email communications and

20   produced all responsive emails."  (Doc. 54 at 27.)  MTC supplemented its responses to this request

21   "with emails and letters that it had with BOP, including but not limited to correspondence to Dr. Pelton

22   about Valley Fever and requests to BOP to consider race-exclusion policies."  (*Id.*, citing Patrick Decl.

23   ¶ 5.)  Defendant maintains that its response was sufficient because MTC "produced all responsive

24   documents in its custody, possession, and control."  (*Id.* at 26.)

25       As an initial matter, it is unclear whether Defendant's supplemental response included the letter

26   dated October 14, 2013.  On the other hand, MTC is not an administrative agency.  *See Edison v.*

27   *United States*, 2013 U.S. Dist. LEXIS 15631 at *3 (E.D. Cal. Feb. 4, 2013).  Similarly, the Kern

28   County Department of Health is not an agency of the Department of Justice or the U. S. Centers for

12

1   Disease Control and Prevention (CDC).  Although Plaintiff wants communications between MTC and

2   the BOP, and MTC and the County Department of Health, such documents are not encompassed in the

3   request for communications "between any agency of the Department of Justice … and the U. S. Centers

4   for Disease Control and Prevention (CDC), and/or any of its divisions."  Moreover, Plaintiff has not

5   presented any evidence that further documents between an agency of the Department of Justice and any

6   division of the CDC are in the care, custody, or control of MTC.  Accordingly, Plaintiff's request to

7   compel further responses to the Request for Production Set Two, No. 20 is **DENIED**.

8       **H.       Request for Production Set Two, No. 23**: Any and all DOCUMENTS that pertain to
        the number of administrative tort claims presented by or filed by federal inmates that allege they
9       contracted the disease Coccidioidomycosis (or "Valley Fever") as a result of their incarceration
        at Taft CI.

10

11      Defendant asserts that this request also should have been directed to the Federal Bureau of

12  Prisons.  (Doc. 54 at 28.)  On the other hand, Plaintiff asserts:

13          Early in this litigation, counsel for MTC argued that MTC should be dismissed because of
            purported non-compliance with the PLRA. The Court ordered MTC to provide its
14          grievance procedures for Tort claims, and MTC did so. Each of the three plaintiffs initially
            filed the informal grievance with their counselor at TCI, per MTC's grievance policy.
15          Presumably, others did so as well. If MTC is asserting that no inmate ever filed a
            grievance with MTC relating to cocci, MTC should so state. If not, MTC should produce
16          the copies of the grievances. Moreover, MTC produced a document of performance
            meetings in 2008 that states that "A total of 50 Administrative Remedies were filed for the
17          reporting period. Twenty one for UDC matters and 28 for medical. One was closed -
            granted; one was closed - denied, and two were rejected." (MTC 2200). Plaintiff is entitled
18          to know if these, or other administrative claims, were related to the spread of cocci at TCI.

19  (*Id.* at 28.)  In response, Defendant asserts that "Plaintiff is confusing government tort claims with

20  administrative appeals."  (*Id.* at 29.)  Indeed, government tort claims must be "presented in writing to

21  the appropriate Federal agency . . ."  28 U.S.C. § 2401(b).  As such, any government tort claims would

22  have been filed with the Bureau of Prisons, not MTC.

23      Furthermore, Defendant asserts that "[n]o government tort claims were filed with MTC, nor

24  does MTC receive copies of any tort claims that Plaintiff may have filed with Bureau of Prisons in

25  connection with the Federal Tort Claims Act."  (Doc. 54 at 29.)  As a result, MTC reports "[t]here are

26  no documents responsive to plaintiff's request in defendant's possession, custody, or control."  (*Id.* at

27  28.)  This response is sufficient, and Plaintiff has not identified any evidence suggesting the contrary.

28  *See Evans*, 2010 U.S. Dist. LEXIS 36953, at *8.  Therefore, Plaintiff's request to compel responses to

1    Request for Production Set Two, No. 23 is **DENIED**.

2        **I.        Request for Production Set Two, No. 24**:  Any and all DOCUMENTS that pertain to
         the number of tort suits and/or civil rights suits filed by federal inmates that allege they
3        contracted the disease Coccidioidomycosis (or "Valley Fever") as a result of their incarceration
         at Taft CI.

4

5        Defendant objects that Plaintiff "assumes facts not in evidence" with this request.  (Doc. 54 at

6    29.)  As explained above, this is not a proper objection in the course of discovery, and this objection is

7    overruled. *See Garcia*, 2012 WL 1232315, at *2; *Roesberg*, 85 F.R.D. at 298.  MTC objects also to the

8    request as overly broad and unduly burdensome because Plaintiff "seeks 'any and all documents'

9    pertaining to any lawsuit for an indefinite time period."  (*Id.*)  Nevertheless, Defendant conducted an

10   investigation and identified cases brought by Fekrat, Edison, Hammond, Aluya, Sutton, Nuwintore,

11   Healy, and Mercado.  (Doc. 54 at 29-30.)  According to MTC, "Litigation Coordinator D. Patrick is

12   apprised of lawsuits involving inmates who are or were at Taft, and he is not aware of any other

13   lawsuits involving Valley Fever other than the lawsuits identified in Defendant's response." (*Id.* at 30,

14   citing Patrick Decl. ¶ 9.)  Specifically, Mr. Patrick reports:

15           I am made aware of all lawsuits that are filed relating [to] incidents that occurred while
             inmate are or were inmates at Taft. I am aware that the following lawsuits have been filed
16           against MTC regarding Valley Fever at Taft: *Edison v[.] United States of America, et al.,*
             *Fekrat v. United States of America, et al.* (closed), *Hammond v. MTC, Aluya v. MTC,*
17           *Sutton v. MTC, Mercardo v. United States of America,* and *Healy v. Taft Federal*
             *Correctional Institution, et al.  Healy* was recently dismissed. I have been informed about
18           the lawsuit *Walker v. GEO.*  However, it is my understanding that this involved an
             incident relating to Valley Fever which occurred before MTC took control operation of
19           Taft. I am not aware of any other lawsuits.

20   (Doc. 54-1 at 69-70, Patrick Decl. ¶ 9.)  Again, Plaintiff presents no evidence that Defendant has not

21   been candid and that further information exists.  Therefore, Plaintiff's request to compel further

22   responses to Request for Production Set Two, No. 24 is **DENIED**.

23       **J.        Request for Production Set Two, No. 28**: Any and all DOCUMENTS that pertain to
         any measures implemented, or considered for implementation, to prevent inmates from being
24       infected with Valley Fever at Taft CI from 2004 to the present.

25       In its initial response to this request, MTC referred Plaintiff to documents already in his

26   possession, including the "Standard Operating Procedure: Intake Screening (SOP-14 4005) (MTC

27   0724-0730); Procedure re Treatment of Inmates with Cocci/Valley Fever (SOP-4002) dated October

28   2007 (MTC 0022-0026); [and] American Lung Association, Facts about Cocci. (MTC 0001-0003)."

(Doc. 54 at 31.)  In addition, Defendant provided copies of minutes from performance meetings where Valley Fever was discussed.  (*Id.* at 32.)

Plaintiff reports that Defendant "'padded' its responses" by providing "13 identical copies of the minutes of one meeting" and failing to "provide the minutes from the following performance meetings: April, June, July and November, 2009; March, May, October, November, December, 2010; ALL months in 2011 except November and December; and May, 2013." (Doc. 54 at 32.)  MTC reports this was an unintentional error, and admits its error in omitting the minutes.  (*Id.*)  At the hearing, Plaintiff's request noted that the minutes had been produced but MTC admitted also that the April 2009 minutes were not.  MTC committed to producing them.  Thus, the April 2009 minutes **SHALL** be produced via e-mail **no later than February 2, 2015**. Thus, the motion to compel further responses is **DENIED**.

**K.      Request for Production Set Two, No. 31**: Any and all DOCUMENTS related to the annual cost - per inmate - of …treating an inmate infected with disseminated Coccidioidomycosis (or "Valley Fever"), while that inmate is incarcerated by the BOP.

Defendant asserts that this request "assumes facts not in evidence, is overly broad as to time period and facility, and unduly burdensome."  (Doc. 54 at 33.)  In addition, MTC argues this request violates the HIPAA and privacy rights of third parties to the extent any "medical records for individual inmates are sought." (*Id.*)

For the reasons set forth above, Defendant's objection that the request "assumes facts not in evidence" is overruled.  *See Garcia*, 2012 WL 1232315, at *2; *Roesberg*, 85 F.R.D. at 298.  Further, Defendant fails to explain how the request is unduly burdensome.  Because the Court cannot speculate as to the grounds upon which this objection is based, the objection is overruled.  *See Burlington Northern & Santa Fe Ry.*, 408 F.3d at 1149; *Oakes*, 179 F.R.D. at 283.

On the other hand, Plaintiff does not address Defendant's argument that the request is overly broad because it includes prison facilities that are not operated by MTC, and in regions were Valley Fever is not endemic. The Court finds the objection is well-taken and it is sustained.  Moreover, Defendant identified "the number of individuals who were diagnosed with Valley Fever at Taft through the infectious disease reports," as well as "the costs of diflucan . . . from August 20, 2007 until September 29, 2014."  (Doc. 54 at 33.)  Defendant asserts that it does not have "custody or control of

1   any documents related to the cost of . . . outside care, as MTC pays for outside medical services in the

2   aggregate and does not differentiate between Valley Fever medical expenses versus other types of

3   medical expenses."  (*Id.* at 33-34.)  Plaintiff presents no evidence that additional documents exist.  *See*

4   *Evans*, 2010 U.S. Dist. LEXIS 36953, at *8.  At the hearing, Defendant clarified that it had no further

5   responsive documents except for minutes related to an April 2009 meeting which they **SHALL** provide

6   via e-mail **no later than February 2, 2015**.  Consequently, Plaintiff's request to compel further

7   responses to Request for Production Set Two, No. 31 is **DENIED**.

8           **L.       Request for Production Set Two, No. 34**: Any and all DOCUMENTS evidencing any
            claims by inmates related to Coccidioidomycosis (or "Valley Fever") at Taft CI.

9

10          Defendant objects that this request is "vague and ambiguous, and overly broad as to the term

11  'all documents evidencing any claims,' and is therefore unduly burdensome."  (Doc. 54 at 34.)  The

12  Court agrees.  For example, Plaintiff could be seeking information made on claims made by inmates to

13  medical personnel regarding their symptoms, or claims made to prison staff regarding the need for

14  medical treatment, government tort claims filed with the BOP, administrative grievances filed with

15  MTC, or claims filed in either the state or federal courts.  Thus, the request is not sufficiently clear to

16  place MTC upon "reasonable notice" of the type of "claims" Plaintiff seeks information regarding.  *See*

17  *Kidwiler v. Progressive Paloverde Ins. Co.*, 192. F.R.D. at 202; *see also* Fed. R. Civ. P. 34(b)

18  (requiring that a document request describe items with "reasonable particularity").  Plaintiff's request to

19  compel further discovery in response to Request for Production Set Two, No. 34 is **DENIED**.

20          **M.      Request for Production Set Two, No. 36**: Any and all DOCUMENTS related to any
            ground disturbing activities that took place at Taft CI between 2010 and the period of Plaintiffs
21          [sic] incarceration, including, but not limited to, plumbing or other maintenance and gardening
            practices.
22

23          Initially, Defendant objected the request, in part, as "vague and ambiguous at to the term[]

24  'ground disturbing activities,'" because the term was not defined.  (Doc. 54 at 35.)  In response,

25  Plaintiff clarified that "[g]round breaking activities" included "plumbing, gardening and 'discing'

26  (looking for contraband under soil)."  (*Id.*)  Also, Plaintiff reported "several witnesses have discussed

27  work on a plumbing drain on or around 2012 which required the disruption of soil."  (*Id.*)  Plaintiff

28  argues he is "entitled to know what ground-disturbing activities took place on site (to determine if they

16

1    were done in a fashion that did, or did not, prevent inmates from infection." (*Id.* at 35-36.)

2        In a supplemental response, MTC "produced documents and emails in its control regarding the

3    water pipeline project," which MTC asserts "was the only construction project that involved the

4    breaking of soil." (Doc. 54 at 36.) According to Defendant, these documents establish that "MTC had

5    a very limited role in construction projections—mainly providing gate clearance to BOP contractors."

6    (*Id.*) Defendant maintains that "it is not the custodian of records for the U.S. Bureau of Prisons," and

7    Plaintiff's request should have been directed to the BOP. (*Id.*)

8        Plaintiff acknowledges "some responsive documents were received," and fails to explain how

9    the supplemental response was nonresponsive or otherwise insufficient. The Court cannot manufacture

10    arguments on Plaintiff's behalf related to the sufficiency of the discovery response. *See Womack v.*

11    *Virga*, 2011 WL 6703958, at *11 (E.D. Cal. Dec. 21, 2011) (explaining that the party seeking to

12    compel discovery "has the burden of informing the court why . . . the defendants' responses are

13    deficient"); *Walker v. Karelas*, 2009 WL 3075575, at *1 (E.D. Cal. Sep. 21, 2009) (at a minimum, the

14    moving party plaintiff has the burden of informing the court . . . why he believes the defendant's

15    responses are deficient"). Further, Plaintiff identifies no evidence from which the Court may determine

16    that additional responsive documents exist. *See Evans*, 2010 U.S. Dist. LEXIS 36953, at *8.

17        At the hearing, Plaintiff's counsel complained that Defendant's response failed to identify the

18    relevant Bates-numbered documents. Thus, **no later than February 6, 2015**, Defendant's counsel

19    **SHALL** identify to Plaintiff's counsel the specific documents at issue by providing the Bates numbers

20    of these documents.

21        Therefore, the request to compel further responses to Request for Production Set Two, No. 36 is

22    **DENIED**.

23        **N.    Request for Production Set Two, No. 37**: Any and all DOCUMENTS, including all
        contracts, permit applications, and responses thereto, related to any instance in which YOU or a

24        private contractor at YOUR discretion broke the soil at the Taft CI facility.

25        As with the related prior request, Plaintiff fails to explain how the supplemental response to the

26    request, which included the documents and emails related to the water pipeline project at Taft CI, was

27    not responsive or otherwise insufficient. *See Womack*, 2011 WL 6703958, at *11; *Evans*, 2010 U.S.

28    Dist. LEXIS 36953, at *8. For the reasons set forth as to Request No. 36, the request to compel further

responses to Request for Production Set Two, No. 37 is **DENIED**.

    **O.    Request for Production Set Two, No. 38**: Any and all DOCUMENTS and materials related to the watering of the grass that covered the grounds at Taft CI between 2010 and the period of Plaintiffs [sic] incarceration at Taft CI, including but not limited to, materials related to the implementation, or ceasement, of ground- watering activities at Taft CI.

    Defendant objected, "This request assumes facts not in evidence, and is vague and ambiguous." (Doc. 54 at 37.)  For the reasons set forth above, these objections are overruled.  *See Garcia*, 2012 WL 1232315 at *2; *Roesberg*, 85 F.R.D. at 298; *Burlington Northern & Santa Fe Ry.,* 408 F.3d at 1149.  In addition, Defendant objected "th[e] request is overly broad in time period and seeks information not reasonably calculated to lead to the discovery of admissible evidence."  (*Id.* at 37.)  Given that the evidence related to watering relates to methods that may be taken to prevent Valley Fever, Defendant's objection on the grounds of relevancy is overruled.

    Nevertheless, Plaintiff reports that "MTC identified some documents that relate to MTC's decision to cease watering the grass at TCI." (Doc. 54 at 38.)  Plaintiff argues the discovery produced does not include "any internal documents relying on the materials [MTC] provided, or used in determining whether to continue providing the ground-cover (an effective method to combat the spread of cocci-infections." (*Id.* at 38.)  According to Plaintiff, "Someone at MTC made a decision, and informed others, to cease watering the grounds," and he is "entitled to see all documents and emails relating to that decision." (*Id.*)  However, Defendant has explained that "most prison administrative matters are no communicated via email" or in writing, but were rather "discussed over the phone and during meetings with the Bureau of Prisons." (*Id.*)  MTC produced the minutes from all such meetings, and conducted "a diligent search regarding email communications." (*Id.*, citing Patrick Decl. ¶ 5.)

    Although Plaintiff speculates there must be more documents, he has not identified any evidence supporting this assertion.  *See Evans*, 2010 U.S. Dist. LEXIS 36953, at *8.  Therefore, Plaintiff's request to compel further responses to Request for Production Set Two, No. 38 is **DENIED**.

    **P.    Request for Production Set Two, No. 39**: Any and all DOCUMENTS including all contracts and permit applications and responses related to any instance in which MTC (or an inmate working at MTC's discretion) or a private contractor broke the soil at Taft CI.

    As with Request Nos. 36 and 37, Plaintiff fails to explain how Defendant's supplemental response, which included the documents and emails related to the water pipeline project at Taft CI, was

not responsive or otherwise insufficient.  *See Womack*, 2011 WL 6703958, at *11; *Walker*, 2009 WL 3075575, at *1.  For the reasons set forth above, the request to compel further responses to Request for Production Set Two, No. 39 is **DENIED**.

  **Q. Request for Production Set Two, No. 40**: Any and all DOCUMENTS and materials related to any construction on the grounds at Taft CI between 2010 and the period of Plaintiffs [sic] incarceration at Taft CI.  This shall include all contract and permit applications and responses related to any instance in which MTC (or an inmate working at MTC's direction or a private contractor broke the soil at the Taft CI facility).

  Again, Plaintiff fails to explain how Defendant's supplemental response was not sufficient.  *See Womack*, 2011 WL 6703958, at *11; *Walker*, 2009 WL 3075575, at *1.  Plaintiff does not present any evidence that any construction occurred at Taft CI other than the water pipeline project, or that creates a reasonable belief that more information exists.  *See Evans*, 2010 U.S. Dist. LEXIS 36953, at *8.  For the reasons set forth above, the request to compel further responses to Request for Production Set Two, No. 40 is **DENIED**.

  **R. Request for Production Set Two, No. 42**: Any and all DOCUMENTS and materials related to efforts by MTC to reduce the spread of infection of Coccidioidomycosis ("cocci") at Taft CI.

  Defendant objects to this request as vague and ambiguous, overly broad as to time period, and unduly burdensome.  (Doc. 54 at 40.)  Further, Defendant asserted the request was overbroad "if it requests medical records for any/all inmates who report to medical staff with potential symptoms of Coccidioidomycosis, as those records are maintained in patient medical records," and that the "inmate medical records are protected by privacy rights and HIPAA protections."  (*Id.* at 40-41.)  Without waiving these objections, Defendant produced the "MTC, Taft CI Handbook, dated 2014," and directed Plaintiff to documents already in his possession, including the Standard Operating Procedure (SOP-4002), Treatment of Inmates with Cocci/Valley Fever, Standard Operating Procedure (SOP-4005), Intake Screening (MTC 0724-0730), and "Taft Correctional Institution Infectious Disease Report From September 2007 until December 2011."  (*Id.* at 41.)

  Plaintiff concedes the time was overbroad, and responded that "MTC can limit its responses to the time period in which it operated TCI."  (Doc. 54 at 41.)  In addition, Plaintiff asserts that the documents produced "establish that those sought by the Request exist – for example: [] The Standard Operating Procedure is a final document that describes how TCI is to be run by MTC.  MTC

presumably developed the SOP based on suggestions, drafts, and discussions." (*Id.*)  Further, he asserts "The 'Taft Correctional Institution Infectious Disease Report From September 2007 until December 2011 (MTC 0731-782)' is a purported summary of the amount of inmates who became infected on a monthly bases . . . based on some other information (presumably the Kern County Department of Health cocci forms) . . ." (*Id.* at 42.)  Plaintiff contends he is entitled to see any drafts and documents used to prepare the final documents produced by MTC.  (*Id.* at 41-42.)

In response, Defendant asserts Plaintiff is "seeking documents related to the [Standard Operating Procedure] that no longer exist." (Doc. 54 at 42.)  MTC reports that "SOP-4002 was established in 2007, and per the email retention policy [to keep emails 180 days], MTC does not retain emails from that time period."[3] (*Id.*; Doc. 54-1 at 69, Patrick Decl. ¶ 4.)  Further, Defendant reports Plaintiff has "several prior versions of the SOP," which Plaintiff does not dispute.  (*Id.*)

Finally, it is not clear how the medical records of any inmates would be responsive to the request for "efforts by MTC" to reduce the spread of Valley Fever.  Although, the medical records would describe the treatment received by the inmates, they would not identify policies or practices implemented by MTC to reduce the infection rate of others.

Because Defendant reports it has produced all response documents (Doc. 54 at 42), and Plaintiff has not presented evidence that creates a reasonable belief that more information exists, the request to compel further responses to Request for Production Set Two, No. 42 is **DENIED**.

**S.**      **Request for Production Set Two, No. 47**: All DOCUMENTS, including correspondence and emails, between MTC and the USA and/or the Federal Bureau of Prisons which references or relates to "Valley Fever", "Coccidiodomycosis" or "cocci" between 2007 and the present.

Defendant asserts this request "assumes facts not in evidence, is overly broad as to time period and scope of documents, and is overly burdensome." (Doc. 54 at 44.)  Despite these objections, Defendant "produced the Infectious Disease Reports from September 2007 to July 2013," and reports it has "requested the Infectious Disease Reports from July 2013 to present, and will supplement this response upon receipt." (*Id.*)  In the supplemental response, MTC produced "emails and letters that it

---

[3] Notably, emails from 2007 related to the establishment of the Standard Operating Procedure would not have been subject to a litigation hold, as no actions had been filed against MTC at that time.

had with BOP, including correspondence to Dr. Pelton about Valley Fever and requests to BOP to

consider race-exclusion policies." (*Id.*)  Therefore, Defendant asserts the "response was adequate

because [MTC] produced all documents in its custody, possession, and control." (*Id.*)

On the other hand, Plaintiff asserts Defendant's "Response was insufficient[,] [f]or the same

reasons identified in the discussion of Request for Production No. 12." (Doc. 54 at 44.)  Plaintiff

acknowledges that MTC produced "emails from 2011 from MTC to the BOP related to the cocci

problem at TCI," but asserts MTC did not produce "[a] privilege log or other documents identifying

other documents that were not produced." (Doc. 54 at 16.)  However, Defendant did not assert any

privilege exists in response to the request for production, and Plaintiff does not explain how the

documents produced as part of MTC's supplemental response were not sufficient to respond to Request

No. 47.  *See Womack*, 2011 WL 6703958, at *11; *Walker*, 2009 WL 3075575, at *1.  Moreover, there

is no evidence to suggest Defendant was not telling the truth that it has produced all documents

responsive to this request in its care, custody and control.  Therefore, the request to compel further

responses to Request for Production Set Two, No. 47 is **DENIED**.

> **T.      Request for Production Set Two, No. 48**: All DOCUMENTS, including
> correspondence and emails, between MTC and any other governmental agency, including, but
> not limited to, the Kern County Department of Health which references or relates to "Valley
> Fever", "Coccidiodomycosis" or "cocci" between 2007 and the present.

MTC objects, in part, to this request for production as "overly broad as to . . . [the] scope of

documents." (Doc. 54 at 44.)  The Court agrees.  Because Plaintiff seeks any and all documents which

even mention Valley Fever, Coccidiodomycosis, or cocci, the request does not give MTC "reasonable

notice" of the documents requested by Plaintiff.  *See Kidwiler*, 192. F.R.D. at 202; *see also* Fed. R. Civ.

P. 34(b) (requiring that a document request describe items with "reasonable particularity").  Rather, the

request is so broad that compliance with the request would place a significant burden upon MTC.

Moreover, production would be unduly burdensome to the extent that Plaintiff seeks medical records

and the cocci forms filed with or by the Kern County Department of Public Health.  Defendant reports

that it does not have a list "of all the Valley Fever positive inmates whose medical files that would have

to be obtained and combed through in order to pull these reports." (Doc. 54 at 15.)  Defendant asserts

the "cocci serology/morbidity reports for each inmate are maintained in inmate medical files and not in

1   a central database." (*Id.*)  As a result, MTC would be required "to go through every inmate medical file

2   and pull the serology reports and other cocci medical records." (*Id.*)  Given the number of inmates

3   housed at Taft CI, and such a task is unduly burdensome.

4        Accordingly, Defendant's objections that the request for production is overly broad and unduly

5   burdensome are **SUSTAINED**, and Plaintiff's request to compel further responses to Request for

6   Production Set Two, No. 48 is **DENIED**.

7        **U.    Request for Production Set Two, No. 49**: All DOCUMENTS, including
        correspondence and emails, between MTC and any private entity which references or relates to

8   "Valley Fever", "Coccidiodomycosis" or "cocci" between 2007 and the present.

9        Defendant objected to this request, arguing: "This request assumes facts not in evidence[4], is

10  overly broad as to time period and scope of documents, and is overly burdensome. This request is

11  vague and ambiguous as to the term 'private entity.' Further this request is irrelevant to the extent that

12  it seeks documents before 2007." (Doc. 54 at 46.)  Defendant explains that it is unclear "what private

13  entities plaintiff is referring to." (*Id.*)  On the other hand, Plaintiff contends: "If MTC spoke with no

14  one, ever, about valley fever at TCI, MTC should so state.[5]  If it is stating that the correspondence was

15  via email, and those emails have been destroyed, MTC should so state." (Doc. 54 at 46.)

16        Significantly, this request suffers the same infirmity as Request No. 48.  Because Plaintiff seeks

17  any and all documents which even mention Valley Fever, Coccidiodomycosis, or cocci, between MTC

18  and any private entity— without clarifying if this is limited to organization— the request does

19  sufficiently identify documents requested by Plaintiff.  *See Kidwiler*, 192. F.R.D. at 202; *see also* Fed.

20  R. Civ. P. 34(b).  Defendant's objections that the request for production is overly broad and unduly

21  burdensome are **SUSTAINED**, and Plaintiff's request to compel further responses to Request for

22  Production Set Two, No. 49 is **DENIED**.

23        **V.    Request for Production Set Two, No. 51**: All complaints, including BOP forms,
        submitted, filed, or provided to YOU or any governmental entity by inmates at TAFT CI which

24  references or relates to "Valley Fever", "Coccidiodomycosis" or "cocci."

25

26        [4] As explained above, this is not a proper objection in the course of discovery, and this portion of the objection is
        overruled. *See Garcia*, 2012 WL 1232315, at *2; *Roesberg*, 85 F.R.D. at 298.

27

28        [5] As noted above, if Plaintiff wished explanation or an admission, he should have propounded an interrogatory or a
        request for admission.

MTC argues, "This request vague and ambiguous, and overly broad as to the term 'all complaints,' and is therefore unduly burdensome." (Doc. 54 at 47.)  Similar to Plaintiff's request No. 34, this request does not give MTC "reasonable notice" of the type of "complaints" sought by Plaintiff. *See Kidwiler v. Progressive Paloverde Ins. Co.*, 192. F.R.D. at 202; *see also* Fed. R. Civ. P. 34(b) (requiring that a document request describe items with "reasonable particularity").  For example, Plaintiff could be seeking information on complaints made by inmates *to* medical personnel regarding their symptoms, complaints made *about* medical personnel for inadequate medical assistance, any administrative complaints filed with MTC, or complaints filed in the state and/or federal courts. Indeed, in response to the request, Defendant identified complaints filed in this Court and produced inmate grievances raising Valley Fever.  (*See* Doc. 54 at 47.)

Given the lack of clarity, Defendant's objections that the request is vague and ambiguous, and overbroad are **SUSTAINED**, and Plaintiff's request to compel further discovery in response to Request for Production Set Two, No. 51 is **DENIED**.

> **W.    Request for Production Set Two, No. 53**: All DOCUMENTS which references or relates to the issuance of diflucan (or flucanozole) at TAFT CI, including the company or entity from which it was obtained, and at what expense.

Initially, Defendant objected to this request for production.  (Doc. 54 at 48.)  Plaintiff responded that "MTC spends a great deal of money on Fluconazole, which is prescribed to inmates afflicted with disseminated Valley Fever," and argued he is "entitled to know how much is spent on this medication." (*Id*.)  Accordingly, Defendant supplemented its response and "produced the document regarding the ordering of diflucan from August 20, 2007 until September 29, 2014."  (*Id.*)

Plaintiff does not assert the supplemental response was nonresponsive.  (*See* Doc. 54 at 48.) The Court will not speculate as to the sufficiency of the response.  *See Womack*, 2011 WL 6703958, at *11; *Walker v. Karelas*, 2009 WL 3075575, at *1.  Furthermore, Plaintiff presents no evidence that additional responsive documents exist.  *See Evans*, 2010 U.S. Dist. LEXIS 36953, at *8.  Therefore, Plaintiff's request to compel further document production in response to Request for Production Set Two, No. 53 is **DENIED**.

> **X.    Request for Production Set Two, No. 54**: All DOCUMENTS, including correspondence and emails, between MTC and its predecessor, the GEO Group which references or regards "Valley Fever", "Coccidiodomycosis" or "cocci" at TAFT CI.

MTC objects, "This request assumes facts not in evidence, is overly broad as to time period and scope of documents, and is overly burdensome." (Doc. 54 at 49.) Objections notwithstanding, Defendant reports that it "investigated and there are no responsive documents that were retained from when MTC took control from GEO in 2007." (*Id.*)

Because Defendant maintains that there are no responsive documents, Plaintiff's motion to compel responses to Request for Production Set Two, No. 54 is **DENIED**.

**Y.    Request for Production Set Two, No. 56**: All minutes or agendas from any meetings attended by YOU in which the topic of "Valley Fever", "Coccidiodomycosis" or "cocci" at TAFT CI was discussed.

In its supplemental discovery response, Defendant produced a "full set of minutes from 2007 to present to Plaintiff." (Doc. 54 at 50.) However, MTC indicated at the hearing, it failed to produce the minutes from the April 2009 meeting and committed to doing so **no later than February 2, 2015**. Because MTC complied with the discovery request and it does not appear there are any outstanding responsive documents, Plaintiff's request to compel further responses to Request for Production Set Two, No. 56 is **DENIED**.

**Z.    Request for Production Set Two, No. 60**: All applications for insurance presented to any insurer by YOU which mention "Valley Fever", "Coccidiodomycosis" or "cocci".

Defendant sought clarification from Plaintiff regarding "which insurance documents Plaintiff was seeking . . . , as Defendant was unclear what precise documents Plaintiff was looking for or how they were relevant to the case." (Doc. 54 at 52.) However, MTC reports that Plaintiff did not provide any clarification. (*Id.*) Nevertheless, Defendant's counsel "investigated the matter and was informed that MTC does not submit a written application for insurance." (*Id.*, citing Doc. 54-1 at 66, Gruenberg Decl. ¶ 11.) Because MTC has not submitted written applications for insurance, there are no documents to be produced, and Plaintiff's request to compel responses to Request for Production Set Two, No. 60 is **DENIED**.

**AA.    Request for Production Set Two, No. 61**: All policies of insurance which may provide YOU with coverage for any claims arising out of an incidence of "Valley Fever", "Coccidiodomycosis" or "cocci" at TAFT CI.

Defendant objected to this request, and noted that it sought clarification as to what was being sought. However, rather than providing clarification, the current motion was filed. At the hearing,

24

counsel clarified that the request was directed "primarily" at health care insurance coverage but agreed

that this request could have applied to liability coverage as well.  However, because MTC interpreted

this, fairly, as a request for the information related to health care coverage and Plaintiff failed to

provide clarification that he also sought liability coverage, and MTC has documented that it has no

such health care coverage for the costs associated with the treatment of Valley Fever, the request is

**DENIED**.

> **BB.    Request for Production Set Four, No. 62**: All DOCUMENTS that reference or regard any steps taken by, or considered by, MTC to address the incidence of "Valley Fever", "Coccidiodomycosis" or "cocci" at TAFT CI.

Defendant argues this request is duplicative of No. 42, which sought documents "related to

efforts by MTC to reduce the spread of infection" of Valley Fever at Taft CI.  (Doc. 54 at 55; *see also*

*id.* at 40.)  MTC notes that it "produced policies, minutes, emails, administrative grievances, and other

documents showing how MTC responded to address Valley Fever."  (*Id.*)  According to Defendant,

"Plaintiff has not demonstrated how Defendant's responses are insufficient."  (*Id.*)  The Court agrees.

The requests are substantively similar, and require the same documents to be produced, such as

the MTC Taft Handbook, Standard Operating Procedures, and guidelines for "Treatment of Inmates

with Cocci/Valley Fever."  Given the duplicative nature of the request, Plaintiff's motion to compel

further responses to Request for Production Set Four, No. 62 is **DENIED**.  *See, e.g., Reese v. Basi*,

2014 U.S. Dist. LEXIS 78307, at \*19 (E.D. Cal. June 6, 2014) (denying a request to compel the

production of documents "as duplicative").

> **CC.    Request for Production Set Four, No. 63**: All DOCUMENTS that reference or regard dust control measures taken by, or considered by, MTC to address the incidence of "Valley Fever", "Coccidiodomycosis" or "cocci" at TAFT CI.

Defendant objects to this request on several grounds, but directed Plaintiff "to the Taft

Correctional Institution Admission and Orientation Program Lecture- Medical, which was produced in

response to Plaintiffs [sic] Third Set of Request for Production of Documents."  (Doc. 54 at 55-56.)

MTC noted these documents "includ[e] several policies that relate to dust."  (*Id.* at 56.)

Plaintiff does not explain how this response was nonresponsive or deficient. *See Womack*, 2011

WL 6703958, at \*11 (the party seeking to compel discovery "has the burden of informing the court

why . . . the defendants' responses are deficient").  To the extent that the responses were insufficient,

1    Plaintiff met his burden of explaining any "actual and substantial prejudice" from the denial of further

2    discovery.  *See Branch*, 2014 U.S. Dist. LEXIS 109288  at *10 (citing *Hallet*, 296 F.3d at 751 (9th Cir.

3    2002)).  Finally, this request is substantively the same as the prior requests made by Plaintiff regarding

4    efforts undertaken by MTC to address and prevent the spread of Valley Fever at Taft CI.[6]  Accordingly,

5    Plaintiff's motion to compel further responses to Request for Production Set Four, No. 63 is **DENIED**

6          **DD.    Request for Production Set Four, No. 64**: All DOCUMENTS that reference or regard
         the availability of masks for inmates at TAFT CI.

7

8          Previously, MTC produced the "N95 Mask Clearance Packet and Procedures."  (Doc. 54 at 11.)

9    Responding to this request, Defendant asserts Plaintiff seeks documents that are overbroad in scope and

10   "irrelevant to the extent that it seeks documents [related to time] before MTC took over management of

11   the premises in August 2007."  (*Id.* at 56.)  Plaintiff has not carried his burden to explain why

12   Defendant's objections to the request as overbroad and irrelevant are without merit. *See Waterbury*,

13   2008 WL 2018432 at *1 ("the moving party bears the burden of informing the court . . . for each

14   disputed response, why defendant's objection is not justified").  These objections are sustained.

15         In addition, Defendant directed Plaintiff to other documents previously produced, including

16   "The Taft Correctional Institution Admission and Orientation Program Lecture- Medical."  (Doc. 54 at

17   57.)  Plaintiff acknowledges that Defendant produced "TCI forms and instructions . . . as to how

18   inmates could request various types of masks."  (*Id.*) There is nothing in the record that "creates a

19   reasonable belief that more information exists.  *See Evans*, 2010 U.S. Dist. LEXIS 36953, at *8.

20         At the hearing, Plaintiff's counsel asserted that this request should have generated production of

21   receipts related to purchasing masks for inmates.  However, in the meet and confer efforts, counsel

22   never made this clarification and the request, as phrased, fails to alert MTC that cost information was

23   being sought.  Accordingly, Plaintiff's motion to compel further responses to this request is **DENIED**.

24         **EE.    Request for Production Set Four, No. 70**: All DOCUMENTS that reference or regard
         any grass cover, or decision to let grass die, on the grounds at TAFT CI.

25

26         At the hearing, Plaintiff's counsel indicated that this dispute had been resolved and, therefore,

27

28   _____

         [6] Indeed, Plaintiff acknowledges the duplicative nature of the request by referring the Court to his arguments made
     in support of the Request No. 42, through which he sought all documents and materials "related to efforts by MTC to reduce
     the spread of infection of coccidiodomycosis."  (*See* Doc. 54 at 40; *id.* at 56.)

the motion as to this request is deemed **WITHDRAWN**.

      **FF.    Request for Production Set Four, No. 71**: All DOCUMENTS that reference or regard any detail, policy or program concerning inmates and activities which involve working with the soil or ground disruption including but not limited to groundskeeping and gardening.

      Without waiving its objections in response to this request, MTC referred Plaintiff to "the Taft Correctional Institution Admission and Orientation Program Lecture-Medical," which was produced previously.  (Doc. 54 at 59.)  Plaintiff argues the "reference to three pages of an orientation brochure is insufficient." (*Id.* at 60.)  Plaintiff asserts that through this request, he sought information regarding "what were given inmates that involved the disturbing of soil (such as gardening, plumbing, assistance, or discing, etc.)." (*Id.*)  Further, Plaintiff sought documents identifying "what precautions were taken so that inmates involved in such activities would not get infected, or that the activities were done in a fashion to minimize the risk to others." (*Id.*)  According to Plaintiff, "Simply put – inmates cleaned the ground and were involved in maintaining the premises. MTC knows what inmates were instructed to do," and he is "entitled to see what MTC did or did not do in relation to this hazardous activity." (*Id.*)

      Importantly, the request does not clearly include the information Plaintiff seeks.  Further, this request is substantively duplicative to other requests Plaintiff made regarding "ground disruption" and "breaking the soil," such as Request No. 36 for any documents "related to ground disturbing activities . . . including, but not limited to, plumbing or other maintenance and gardening practices." (*See* Doc. 54 at 35.)  Finally, MTC asserts that it "has produced all responsive documents" (*id.* at 60), and there is no evidence in the record to suggest that further information exists.  Therefore, Plaintiff's motion to compel further responses to Request for Production Set Four, No. 71 is **DENIED**.

      **GG.    Request for Production Set Four, No. 73**: All DOCUMENTS that reference or regard the time an inmate would spend outside per day, on average, at TAFT CI.

      Defendant objected to this request as "vague and ambiguous, . . . overly broad, and unduly burdensome." (Doc. 54 at 61.)  Also, Defendant objected that the information sought "is irrelevant to the extent that it seeks documents before MTC took over management of the premises in August 2007." (*Id.*)  Despite these objections, MTC reported that it found "no documents responsive to plaintiffs [sic] request." (*Id.*)

      Plaintiff asserts Defendant's response was not sufficient, because there have been "[s]everal

1   studies . . . to determine the spread of cocci at prisons in the San Joaqin [sic] Valley [that] evaluated the

2   amount of time an inmate spends each day outside." (Doc. 54 at 61.)  Plaintiff argues, "Either this

3   information is available, or MTC never inquired." (*Id.*)

4          Defendant supplemented its response "to refer to the inmate handbooks that says that the

5   recreation department is open seven days a week, 0600-2030 hours, unless there is inclement weather."

6   (Doc. 54 at 62.)  Defendant explained that Taft CI "is a low level facility," and "there is not a strict

7   schedule." (*Id.* at 62.)  The time spent outside by each inmate depends on job assignments, educational

8   classes, and the time chosen to participate in outdoor recreation—and there is no "documentation of

9   how much time an average inmate spends outside." (*Id.* at 61-62.)  Finally, MTC reports it "is not

10  aware that any studies were conducted at its facility." (*Id.* at 63.)

11         Plaintiff does not assert the supplemental response was nonresponsive, and does not identify

12  any study undertaken at Taft CI that evaluated the time spent outside by inmates.  (*See* Doc. 54 at 61-

13  62.)  Because it does not appear that additional responsive documents exist, Plaintiff's request to

14  compel further responses to Request for Production Set Four, No. 73 is **DENIED**.

15         **HH.    Request for Production Set Four, No. 79**: All communications with any third parties,
       including the Kern County Department of Health related to "Valley Fever",

16     "Coccidiodomycosis" or "cocci".

17         MTC asserts this request is overly broad and "duplicative of prior requests for production of

18  documents regarding this topic." (Doc. 54 at 62.) As part of his second set of requests, Plaintiff

19  previously sought correspondence and emails between MTC and any private entity and "any other

20  governmental agency, including, but not limited to, the Kern County Department of Health which

21  references or relates to "Valley Fever", "Coccidiodomycosis" or "cocci" between 2007 and the

22  present." (*See* Doc. 54 at 44-46.)  Because the request is duplicative, and for the reasons set forth above

23  related to Request Nos. 48 and 49, Plaintiff's motion to compel further responses to Request for

24  Production Set Four, No. 79 is **DENIED**.

25  **V.     Conclusion and Order**

26         Based on the foregoing, the Court **ORDERS**:

27         1.      Plaintiff's Motion to Compel Defendants' Response to Discovery (Doc. 53) is

28                 **DENIED**:

2.      Defendant **SHALL** provide written confirmation that was no separate line item related to the cost of hospitalization for the three inmates treated for Valley Fever **no later than February 6, 2015**;

3.      **No later than February 2, 2015**, Defendant **SHALL** provide the minutes form the April 2009 meeting via e-mail to Plaintiff's counsel;

4.      **No later than February 6, 2015**, Defendant's counsel **SHALL** identify to Plaintiff's counsel the specific documents relevant to the water pipeline project at TCI by providing the Bates numbers of these documents;

5.      The parties are reminded that **no future motion to compel in this case will be heard unless the parties fully comply with the scheduling order.  (Doc. 25 at 4)**

IT IS SO ORDERED.

Dated:   **January 29, 2015**                    **/s/ Jennifer L. Thurston**
                                                      UNITED STATES MAGISTRATE JUDGE

29