1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **JOSEPH USUNUBU ALUYA,** | **CASE NO. 1:13-CV-1345  AWI JLT** |
| **Plaintiff** | |
| **v.** | **ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| **MANAGEMENT & TRAINING CORPORATION  and DOES 1-9,** | **Doc. # 50** |
| **Defendant** | |
| | |
| **DEMOND HAMMOND,** | **CASE NO. 1:13-CV-1209   AWI JLT** |
| **Plaintiff** | |
| **v.** | **ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| **MANAGEMENT & TRAINING CORPORATION  and DOES 1-9,** | **Doc. # 57** |
| **Defendant** | |
| | |
| **BRUCE DWIGHT SUTTON,** | **CASE NO. 1:13-CV-1344  AWI JLT** |
| **Plaintiff** | |
| **v.** | **ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| **MANAGEMENT & TRAINING CORPORATION  and DOES 1-9,** | **Doc. # 60** |
| **Defendant** | |

In this order, the court addresses motions for summary judgment filed in each of three separate but related cases by defendant Management & Training Corporation ("Defendant" or "MTC") a private entity that manages the federal correctional facility at Taft, California, under contract with the federal Bureau of Prisons ("BOP").  The plaintiffs in each of the three cases, Joseph Usunubu Aluya, Demond Hammond, and Bruce Dwight Sutton (collectively, "Plaintiffs") arise from the undisputed fact that each of the Plaintiffs contracted the disease Coccidiomycosis ("Cocci") or ("Valley Fever") while incarcerated in the Taft Correctional Institution ("Taft CI").  Defendant is a Delaware corporation with headquarters in Utah.  The parties do not dispute that diversity jurisdiction exists pursuant to 28 U.S.C. § 1332(c).  Venue is proper in this court.

The three cases that are combined for purposes of this order are the most similar of a total of six cases seeking money damages from MTC in its role as managing entity of Taft CI.  The similarities that set these cases apart, aside from the fact they allege identical claims, are that they were all filed in the same month by the same set of attorneys, they all do not allege claims against the United States, and in each of these cases, the Plaintiffs have requested and received permission to file sur-replies that address the issue of qualified immunity as raised by the Magistrate Judges Findings and Recommendations in Smith v. Schwartzenegger, 14cv0060 LJO – SAB.  Two of the six similar cases, Newintore v. United States and Edison v. United States, were filed prior to the three cases under consideration in this order and alleged claims against the United States that were dismissed under the "contractor exception" to the Federal Tort Claims Act ("FTCA").  The issue of the scope of the federal government's immunity under the contractor exception to the FTCA is currently under review by the Ninth Circuit Court of Appeals.  See Nuwintore v. United States, 13cv0967 AWI JLT, Doc. # 79 at p.5.  The court notes that there are no jurisdictional disputes in the three cases considered in this order.

### UNDISPUTED FACTUAL BACKGROUND

The following background facts are drawn from the parties' joint statements of undisputed facts (the "Joint Statements").

Taft CI is located in Kern County in the South-Western corner of the San Joaquin Valley. It is owned by the United States Bureau of Prisons and has been operated under contract by MTC since 2007. The causative agent of the disease coccidiomycosis or "Valley Fever" is a fungus, Coccidioidies immitis, which inhabits the soil in many arid portions of the American Southwest. Coccidioidies immitis is particularly prevalent in the soil in the Southern San Joaquin Valley, including the area where Taft CI is located. Coccidioidies immitis forms spores in the soil and the spores can become airborne along with dust from the soil. These spores can travel hundreds of miles on the wind. When the spores are inhaled, a respiratory infection may occur. The infection is typically self-limiting and has symptoms similar to viral respiratory flu. There is no human-to-human spread of coccidiomycosis. A small percentage of persons – about one percent – who are infected with Coccidioidies immitis will develop a more serious, disseminated form of the disease. This disseminated form is not self-limiting and can affect a number of different organ systems and can cause serious and persistent disease symptoms and even death.

The parties' joint statements allege facts that establish that Defendant was aware of the increase in cases of Valley Fever in both the inmate and general populations in Kern County well before the time period at issue in these cases. See e.g. 13cv1345, Doc. # 50-3 at p.3. It is also not disputed that MTC formulated Standard Operating Procedure 4002 ("SOP 4002") in 2007 and that SOP 4002 was approved by BOP. SOP 4002 addresses "Treatment of Inmates with Cocci/Valley Fever" and includes recommendations for the screening of incoming inmates to exclude those whose immune systems are highly compromised as, for example, in persons with HIV disease, solid organ transplant or undergoing chemotherapy for cancer.

Plaintiff Alaya was received at Taft CI on April 8, 2011. He received medical screening upon arrival and was found not to have any immune deficiencies. There is not disputed that Plaintiff Alaya did not meet the criteria for exclusion from Taft CI according to the criteria established by SOP 4002. Plaintiff underwent a serological test for infection with Cocci in May 2011 and tested positive. Plaintiff Alaya's complaint alleges he suffered severe flu-like

respiratory symptoms.  Defendant Alaya alleges affirmatively that he did not suffer disseminated disease.  Plaintiff Sutton was incarcerated at the federal correctional facility as Safford, Arizona prior to being transferred to Taft CI on November 8, 2011.  Sutton was housed at Taft CI from November 8, 2011 until February, 2012.  Plaintiff was medically screened upon his arrival at Taft CI and did not fit any of the criteria for exclusion.  Plaintiff Sutton was diagnosed with coccidiomycosis in December 2011.  It is clear from the facts alleged in Sutton's complaint that Sutton suffered a severe acute pulmonary disease requiring surgical intervention.  It is not clear that Sutton's pulmonary disease was not self-limiting or that he suffers or suffered from the disseminated form of the disease.  Plaintiff Hammond was received at Taft CI in March 2009.  Like the other Plaintiffs, Hammond was medically screened upon arrival at Taft CI and was found to have no significant diseases or any conditions that would have placed him in any category for exclusion under SOP 4002.  Hammond underwent a serological test for infection with Coccidioidies immitis, the results of which indicated he had been infected.  According to his complaint, Hammond had acute phase pulmonary symptoms similar to those experienced by the other Plaintiffs.  It appears from the stipulated facts that Hammond's infection was self-limiting and there is no evidence he ever suffered symptoms of disseminated disease.

Notwithstanding the small differences in the factual backgrounds of the three Plaintiffs, the court will presume for the sake of this discussion that: (1) all of the Plaintiffs had not been exposed to Coccidioidies immitis prior to their incarceration at Taft CI; (2) each of the Plaintiffs was exposed to, and infected by, spores of Coccidioidies immitis at some point during their incarceration at Taft CI; and (3) the court will presume that the infections experienced by the Plaintiffs, whether disseminated or not, caused damage within the meaning of Plaintiffs' state common law claims for negligence and premises liability.

## LEGAL STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Poller v.

Columbia Broadcast System, 368 U.S. 464, 467 (1962); Jung v. FMC Corp., 755 F.2d 708, 710 (9th Cir. 1985); Loehr v. Ventura County Community College Dist., 743 F.2d 1310, 1313 (9th Cir. 1984).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Although the party moving for summary judgment always has the initial responsibility of informing the court of the basis for its motion, the nature of the responsibility varies "depending on whether the legal issues are ones on which the movant or the non-movant would bear the burden of proof at trial."  Cecala v. Newman, 532 F.Supp.2d 1118, 1132-1133 (D. Ariz. 2007).  A party that does not have the ultimate burden of persuasion at trial – usually but not always the defendant – "has both the initial burden of production and the ultimate burden of persuasion on the motion for summary judgment."  Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).  "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the mere allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).

The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Anderson, 477 U.S. 248-49; Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  First Nat'l Bank, 391 U.S. at 290; T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); International Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Rule 56(c); Poller, 368 U.S. at 468; SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(per curiam); Abramson v. University of Hawaii, 594 F.2d 202, 208 (9th Cir. 1979).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

//

//

**DISCUSSION**

The Plaintiffs' complaints each allege negligence under California common law on three theories; negligent failure to take action to limit exposure to Cocci, negligent failure to insure safe premises and negligent breach of the relationship between prisoner and jailer.  To prove negligence under California law, a "plaintiff must show that the defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury."  Hayes v. County of San Diego, 57 Cal.4th 622, 629 (2013) (citation and internal quotation marks and brackets omitted).  "Although state law sets out the elements required to prove negligence, the standard of care for the BOP is 'fixed by 18 U.S.C. § 4042, independent of [any] inconsistent state rule' allowing for a local jailer's immunity from suit, or a lesser duty."  Smith v. U.S., 207 F.Supp.2d 209, 214 (S.D.N.Y.2002) (quoting United States v. Muniz, 374 U.S. 150, 164-165 (1963)).  In pertinent part, section 4042 provides that the Bureau of Prisons shall "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise."  18 U.S.C. § 4042(a)(2).  The standard imposed by section 4042 is one of ordinary or reasonable care under the circumstances.  Smith, 207 F.Supp.2d at 214.   While federal statute determines the duty of care owed to an inmate, it is generally the case that state law informs an analysis of the contours of questions of duty and breach.  See Cohen v. United States, 252 F.Supp. 679, 688 (N.D. Georgia 1966) ("the duty owed prisoners under state law is persuasive and is of some value as to the standards which ought to be imposed").  The court will therefore borrow liberally from its experience with similar claims related to the many state correctional facilities located in the Southern San Joaquin County.

**I.  Plata and Cocci in State Prisons**

Since 2002, the ability of the California prison system to provide constitutionally sufficient mental, dental and medical care to its inmates has been a matter of review and, eventually, of supervision by federal courts.  In terms of medical care, CDCR stipulated to a consent decree based on a finding of constitutionally deficient medical care in 2002.  CDCR's

inability to implement the consent decree resulted in the placement of medical care in the California prison system under a court-appointed receiver in 2006. See Plata v. Brown, 754 F.3d 1070, 1079 (9th Cir. 2014) ("Plata") (case appendix providing timeline for various events from 2001 when the class action was filed to 2013 when the order under review was filed).  During the period of receivership, Plata has been the judicial vehicle by which a number of improvements to medical care in the California prison system, among them control of exposure to Coddicioidies immitis, have been pursued.  An overview of the development of policies and procedures for state prisons pertaining to coccidiomycosis during the time California prisons have been in receivership is summarized in Plata v. Brown, 3013WL3200587 (N.D. Cal. 2013) (hereinafter, "Plata II").  For purposes of this court's review of Defendant's motions for summary judgment, the following features of the Plata II stand out as particularly significant.

First, it is important to note that the decision of the receiver to impose or not impose additional mitigation strategies to minimize the rate of Cocci infection is driven primarily by the extent to which the incidence of coccidiomycosis at a particular prison exceeds the rate of infection in the community and/or county in which the prison is located.  See id. at *5 (pointing out that of eight state prisons located in the Southern San Joaquin Valley, four – Pleasant Valley State Prison ("PVSP"), Avenal State Prison ("Avenal"), Wasco State Prison, and Northern Kern County State Prison – had rates of coccidiomycosis significantly higher than their surrounding communities).  Of the four state prisons with higher rates, nearly the entirety of the receiver's attention is directed to the two prisons with the highest rates; PVSP with a cocci rate 52 times higher than the surrounding county and Avenal with a rate 10 times higher.  Id.  It is significant to note that the court's order in Plata II mandating expansion of exclusion criteria to include persons of African-American and Filipino descent and persons with diabetes applied only to those two prisons.

Second, it is important to note that the attention the receiver of the California Department of Corrections and Rehabilitation ("CDCR") had devoted to the issue of coccidiomycosis in Southern San Joaquin Valley prisons has not resulted in any prescriptions or standards regarding

environmental mitigation efforts to manage the risk of disease.  In particular, the Plata II court

quoted expert opinion that reported:

> "[T]he chance that [environmental abatement] measures would reduce
> cocci risk is marginal at best, and in any event it would take many years to
> determine whether such measures have any value;" [citation] (". . . .")
> ("Environmental issues are difficult to address and will require additional
> studies and months to years before additional data are available, and the
> efficacy of any environmental abatement/control effort will be difficult to
> assess."); [Citation].

Plata II, 2013 WL 3200587 at *11 n.17 (citing expert opinions of Dr. Gil Chavez, State

Epidemiologist, and Dr. John Galgiani, plaintiff's expert).  The only mitigation strategy

ultimately recommended by the receiver and approved by the court in Plata II was the expansion

of exclusion criteria and the removal of persons fitting within the expanded exclusion criteria set

from PSVP and Avenal prisons.

## II.  Application to Taft CI

In light of the above, there is a single disputed material fact that is essentially

determinative of the outcome of this case.  Defendant's proffered Undisputed Material Fact # 5

("UMF") alleges "there is no evidence that the rate of coccidiomycosis is higher at [Taft CI] than

in the surrounding areas."  Doc. # 58-2 at 8-9.  Plaintiffs dispute Defendant's UMF # 5 by

referring to exhibits "E," "F," "G," and "H" of the Declaration of Brian Bush in opposition to

Defendant's Motion for Summary Judgment, Doc. # 57-4.  The court will briefly discuss each of

these exhibits to assess whether there remains an issue of material fact as to whether conditions

at Taft constituted a danger of exposure to or acquisition of coccidiomycosis that exceeds or

exceeded the risk faced by the public generally.

Exhibit "E" is a study titled "Evaluation of an Enhanced Diagnosis and Treatment

Program for coccidioidomycosis, Kern County, CA."  The report was prepared by Lauren A.

Burwell, MD, et al. and includes researchers from both Centers for Disease Control, the Federal

Bureau of Prisons and Kern County Public Health.  The report does not appear to be dated but includes demographic data regarding the occurrence of coccidiomycosis from 1999 through a portion of 2003.  The court's first observation regarding the content of Exhibit "E" is that it makes recommendations regarding the early diagnosis and treatment of Cocci infections but makes no observations or recommendations regarding environmental factors either at the prison or in the community.

At the end of Exhibit "E" is a set of tables showing the occurrence of coccidiomycosis among Kern County residence, the residents of the community of Taft and among inmates of Taft CI.  The court notes that the United States Census Bureau lists the population of the town of Taft as approximately 9,000 persons during the time period between 1999 and 2003.  The Federal Bureau of Prisons official website puts the inmate population of Taft Correctional Institution Taft CI at slightly over 2,200 inmates.  From these facts the court finds that the inmate population of Taft CI is 20% of the community of Taft.[1]  It follows that, if the rate of acquisition of clinical cases of Valley Fever is the same for both Taft CI and the community of Taft, the number of prisoner cases as a percentage of the total number of cases in the community [prisoner cases] divided by [prisoner + community cases] should not be significantly different that about 20%.

The table at the final page of Exhibit "E" presents the total number of cases (community + inmate cases) and number of inmate cases as a percentage of the total number of cases for each of the years, 1999 through 2003.  In 1999 the inmate cases constituted 11.5% of the total (3 inmate, 26 total); in 2000 the inmate cases were 30% of the total (6 inmate, 20 total); in 2001 the inmate cases were 13.6% of the total (8 inmate, 59 total); in 2002 inmate cases were 17.1% of

---

[1]   Computed as [Inmate Population] divided by [Inmate population] + [Population of City], or; 2200/ [2200 + 9000] = 0.196.

total (7 inmate, 41 Total); and in 2003, the data collected to the date of the report indicate inmate cases were 25.8% of the total (32 inmate, 124 total).  The court finds that the data presented in Plaintiff's Exhibit "E" fails to show that the rate of Valley Fever was significantly higher at Taft CI than in the community of Taft at any time between 1999 and 2003.  While the rate in 2000 is reported to be 30% of the total number of Valley Fever cases, the court notes that this represents an increase of only two cases in the inmate population and thus is likely the result of normal variation around an even distribution of cases between the prison population and the population of the residents of the community.

Exhibit "F" presents a report that appears to be a supplement to the Burwell Report presented in Exhibit "E."  The report is dated September 27, 2005, and includes data concerning inmate cases of Valley Fever diagnosed in 2003 and 2004.  The report set forth at Exhibit "F" shows that the incident of Valley Fever at Taft CI hit a peak of 50 cases in 2003 and that the incidence declined the following year to 38 cases.  There is no information concerning the incidence of Valley Fever in the community of Taft in the report for those two years, so the court can draw no conclusion regarding the rates for Taft CI as compared to the community.

Exhibit "G" consists of a letter or email from Dr. Burwell at CDC to persons who the court presumes received the email on behalf of Defendant.  Plaintiff referenced this email for the apparent purpose of supporting the proposition that "[t]here are risk factors in the prison population that predisposes them to severe disease."  The court finds that the email that comprises Exhibit "G" does not support this proposition.  What the email from Dr. Burwell does is set forth a series of "hypotheses" which Burwell proposes to research further after consultation with the recipients of the email.  Among these hypotheses is the one quoted above.  There is no indication from the email that any of the listed hypotheses – including the one quoted above – are true.  Certainly the fact that the rates of Valley Fever do not differ significantly between the

inmate population and the native population tends to counsel caution in adopting the hypothesis Plaintiff seeks to support.

Exhibit "H" to the Declaration of Brian Bush is an email correspondence dated May 25, 2005, that appears to be from a person named Newton Kendig directed to officials at Taft CI.  It is not clear what connection these individuals have with the litigation, but the court presumes that at least the originator and/or some of the addressees are agents or employees of Defendant. Basically, the email that comprises Exhibit "H" acknowledges the communications between Defendant and CDC and attempts to briefly summarize some of the recommendations from CDC and references actions contemplated to be taken in the future.  Among other things, the email states "[t]he incidence of cocci among inmates was higher among inmates was higher than persons in the community but the CDC attributes this to the fact that the inmates transferred to the facility were susceptible to the infection whereas many Kern County residents have developed host immunity."  Doc. # 57-4 at 65.  The court does not know if this statement is the result of misreading the same information that is presented in the other exhibits, is a result of communications not presented in exhibits, or is simply one person's interpretation of things read, heard or discussed.  In any event, the court finds that this single sentence is insufficient to show that there is an issue of material fact as to whether Plaintiff has shown there was a higher rate of coccidiomycosis among inmates at Taft CI than among the population of the community of Taft.

There are two crucial evidentiary deficits that defeat Plaintiff's claims for negligence. The first is the absence of any consensus, legal or otherwise, as to the environmental mitigations that are both effective and economically reasonable for the purpose of mitigating the risk of exposure to Coccidioides immitis.  It is significant that in the state cases, consultation with both the CDC and the state Department of Public Health failed to produce recommendations for environmental mitigations.  At best, consultation indicated that environmental mitigations might

be approached on a trial basis, but determining which, if any, were effective and reasonable would me a matter of long term research.  In the absence of any clear guidance as to effective environmental mitigations, a showing that the efforts being made by Defendant fall below the standard of care would require a showing that rates of acquisition of Valley Fever by Taft CI inmates are significantly higher than those of the surrounding community.  This showing has not been made.

Not only have Plaintiffs failed to show that rates of acquisition of Valley Fever were any higher in the prison population than in the surrounding community for the years for which data were provided, Plaintiffs have alleged nothing regarding the rates of exposure to and acquisition of coccidiomycosis in the prison population of Taft CI for any year after 2004.  The earliest year relevant to this determinative question for any of the Plaintiffs is 2009.  Having failed to allege anything to show that the rates of exposure to or acquisition of cocciciomycosis were higher in the inmate population of Taft CI than in the surrounding community during the time relevant to this action, Plaintiffs have failed to allege facts necessary to show breach of any duty of care. Defendants are therefore entitled to summary judgment as to each of Plaintiffs' negligence claims.

**III.  Plaintiff's Sur-Reply**

Plaintiffs moved for leave to file a sur-reply following the filing of an order granting a motion for dismissal on the grounds of qualified immunity.  Plaintiff contends that Defendant is not entitled to qualified immunity because no constitutional claim is at issue.  The court agrees. Qualified immunity is not relevant to this action.

In accord with the foregoing discussion, it is hereby ORDERED that Defendant Management and Training Corporation is entitled to summary judgment as to all claims by each

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

of the Plaintiffs.  It is therefore hereby ORDERED that the Clerk of the Court shall enter

judgement in favor of Defendant in each of the above-captioned cases:

     Aluya v. Management & Training Corp.   13cv1345

     Hammond v. Management & Training Corp.  13cv1209

     Sutton v. Management & Training Corp   13cv1344

     The Clerk of the Court shall CLOSE each of the above-listed cases.


IT IS SO ORDERED.

Dated:   July 10, 2015            _____

                        SENIOR  DISTRICT  JUDGE